FILED
Oct 31, 2019
02:25 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Marsha Wright | ) | Docket No. 2018-08-0461 |
| | ) | |
| v. | ) | State File No. 94867-2015 |
| | ) | |
| Tennessee CVS Pharmacy, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Deana C. Seymour, Judge | ) | |

---

### Affirmed and Certified as Final

---

The employee suffered physical and mental injuries during the course and scope of her work as a result of being robbed at gunpoint at the employer's store. The parties stipulated that the employee sustained 15% permanent impairment as a result of her injuries. Following a trial, the court awarded the employee permanent disability benefits and determined the employee was entitled to increased benefits as provided in Tennessee Code Annotated section 50-6-207(3)(B). The court further determined the case was extraordinary as contemplated in Tennessee Code Annotated section 50-6-242(a)(2) and awarded the employee additional benefits for a total of 275 weeks of permanent disability benefits. The employer has appealed. We conclude the preponderance of the evidence supports the trial court's award, and we affirm the trial court's decision and certify it as final.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Alex B. Morrison, Knoxville, Tennessee, for the employer-appellant, Tennessee CVS Pharmacy, LLC

Monica R. Rejaei, Memphis, Tennessee, for the employee-appellee, Marsha Wright

# Factual and Procedural Background[1]

Marsha Wright ("Employee") was employed as a shift supervisor for Tennessee CVS Pharmacy, LLC ("Employer"), in Memphis, Tennessee. In the early morning hours of November 18, 2015, the store where Employee worked was robbed. Employee was either pushed or fell to the floor and held at gunpoint. Immediately following the incident, she complained of shortness of breath and was taken to Methodist Le Bonheur Germantown Hospital and treated for anxiety and elevated blood pressure. Five days later, she presented to Baptist Onecare in Olive Branch, Mississippi, where she reported an inability to sleep and bilateral knee pain that she attributed to the work incident.

Employee was subsequently evaluated by Dr. Kevin Cleveland. The report of her initial visit with Dr. Cleveland noted that Employee complained of calf pain but denied any knee pain. Dr. Cleveland arranged for Employee to participate in physical therapy. At her next visit, Employee reported numbness in her left leg and stated that physical therapy did not help much. Following Employee's third visit, Dr. Cleveland arranged for an MRI of Employee's left knee, which was interpreted as normal. Thereafter, Dr. Cleveland recommended a work conditioning program and a functional capacity evaluation. Following completion of the functional capacity evaluation, Dr. Cleveland released Employee to full duty work, indicating she had reached maximum medical improvement on June 30, 2016. Dr. Cleveland subsequently stated in a written report that Employee did not sustain a permanent impairment as a result of her leg and knee injuries.

Employee reported that she continued to experience stress, anxiety, and sleep disturbance. In January 2016, Employee selected Dr. Ahmad Al-Hamda, a neurologist, from a panel of physicians provided by Employer for Employee's ongoing complaints. At Employee's initial evaluation, Dr. Al-Hamda diagnosed acute post-traumatic stress disorder ("PTSD") and insomnia and recommended that Employee be seen by a psychiatrist. In June 2016, Employer provided Employee a panel of psychiatrists from which Employee selected Dr. Melvin Goldin. Dr. Goldin diagnosed PTSD at Employee's first visit.

In his deposition, Dr. Goldin testified that Employee's PTSD arose primarily out of the November 2015 work incident. He stated that Employee had reached maximum medical improvement on February 8, 2018, and he assigned a permanent impairment rating of 15% based on the Sixth Edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment ("AMA Guides"). Over the course of his treatment, Dr. Goldin prescribed several medications to assist with Employee's

---

[1] Employee filed a motion requesting that we set this case for oral argument. We decline to do so and deny Employee's motion.

continuing complaints of anxiety, depression, and insomnia. He also recommended that Employee "continue the ongoing psychotherapy and pharmacotherapy."

In March 2018, Dr. Goldin signed a Physician Certification Form certifying that "due to the permanent restrictions on activity [Employee] has suffered as a result of the injury [Employee] no longer has the ability to perform [her] pre-injury occupation." In his deposition, Dr. Goldin testified that Employee is "unable to return to her job and place of work from the time of the injury due to her marked fearfulness virtually to the point of paranoia in pretty much any public setting." Dr. Goldin testified that Employee is currently unable to perform work in a public setting, but added "that might change with a couple of years of good treatment." On cross-examination, Dr. Goldin stated that although Employee was currently unable to work in the public sphere, she may be able to perform jobs outside the public sphere, but "[i]t would depend on the job, and details such as how and where the place is, how she has to get there, [and] any number of other variables."

At trial, the parties stipulated that Employee was forty-eight years of age; that she obtained a high school diploma or graduate equivalency diploma; that she had not returned to work for Employer earning the same or a greater wage than she was earning at the time of her injuries; that Employer was unable to accommodate Employee's medical restrictions and did not offer to return her to work; and that, as a result of her work injuries, Employee sustained a permanent impairment of 15% based on the AMA Guides.

Employee testified at trial that, prior to the work incident, she worked for Rite Aid for twenty-one years as a cashier and supervisor, and she had worked as a supervisor for Employer since 2010. Her job duties with Employer included providing customer service, which she described as working as a cashier and resetting the store during closing hours. Employee testified that she had been unable to work since the November 2015 incident due to "anxiety and just being around people." She testified she has "very severe" migraines, which she attributed to her anxiety. She described panic attacks that were triggered by being in a crowd and enclosed buildings, during which she experienced nausea and shortness of breath. Employee testified she experienced "maybe three to four" panic attacks per week and that seclusion in a dark room helped to alleviate the symptoms of her panic attacks. She further testified that, since the work incident, she stays at home and relies on her husband to cook, run errands, and support the household. She said she continues to attend church, but stated she attends a small family church and that she has to sit where she can see who is coming in the door.

Employee testified that she is from Belize and has family in Belize and California that she visited before the work incident. She stated that she is unable to travel now due to her anxiety and that she avoids public settings when she is alone. She said she leaves the house alone approximately once or twice a month and relies on her husband when she

3

goes out in public for long periods of time, such as going to a restaurant. Employee denied a history of anxiety prior to the work incident. On cross-examination, Employee testified that she has not applied for work since the 2015 incident and that she did not know whether she could work in a job where she did not have to deal with the public. She testified she had not made any effort to return to work since the 2015 incident.

Employee's husband also testified, corroborating Employee's testimony. He testified he changed his work shift after the incident to work days and that he comes home at lunch to check on his wife and to prepare her lunch, stating she is no longer able to safely cook for herself. He testified that he has to call Employee before entering his home to avoid frightening her.

Following the trial, the court concluded that Employee was entitled to an original award of 67.5 weeks of permanent disability benefits based on her 15% impairment; that due to her not returning to work and her age, she was entitled to increased disability benefits and a resulting award as provided in Tennessee Code Annotated section 50-6-207(3)(B) (2018); that Employee's case was extraordinary as contemplated in Tennessee Code Annotated section 50-6-242(a)(2) (2018); that Employee had established by clear and convincing evidence that limiting her recovery to the disability benefits provided in Tennessee Code Annotated section 50-6-207(3)(B) would be inequitable; and that the factors identified in Tennessee Code Annotated section 50-6-242(a)(2) for the court to award permanent disability benefits not to exceed 275 weeks were satisfied. Based on these determinations, the trial court awarded 275 weeks of permanent disability benefits totaling $107,428.75. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

## Analysis

Employer raises two issues on appeal. First, Employer contends the trial court erred in determining Employee was entitled to increased permanent disability benefits pursuant to section 50-6-207(3)(B) "because she has put forth no effort into finding a job that could replace the income that she has lost." Second, Employer contends the trial court erred in determining it would be inequitable to limit Employee's award to the increased benefits provided in section 50-6-207(3). More specifically concerning Employer's second issue, Employer asserts Dr. Goldin contradicted his statement in the form certifying that Employee no longer has the ability to perform her pre-injury occupation due to *permanent* restrictions on activity resulting from her work injury. Employer does not contest the original award of 67.5 weeks of permanent disability benefits that the trial court calculated by multiplying Employee's 15% impairment by 450 weeks as provided in section 50-6-207(3)(A).

### *Increased Benefits Pursuant to Section 50-6-207(3)(B)*

Employer contends that the trial court erred in awarding increased permanent disability benefits as provided in section 50-6-207(3)(B). Employer asserts that Employee's "lack of reasonable effort in trying to return to work" disqualified her from increased benefits.

As pertinent to the issue here, section 50-6-207(3)(B) provides that "[i]f at the time the period of compensation provided by subsection (3)(A) ends the employee has not returned to work with any employer . . ., the injured employee may file a claim for increased benefits." In this case, the period of compensation represented by the original award had ended when the case was tried. Accordingly, the trial court properly considered whether it was appropriate to award Employee increased benefits in accordance with subsection 50-6-207(3)(B). That subsection states that, "if appropriate," an employee's original award "shall be increased by multiplying the original award by a factor of . . . 1.35" if the employee has not returned to work with any employer at the time the original period of compensation ends. The statute refers to this increased award as the "resulting award."

In addition to an award being increased because an employee has not returned to work at the end of the time period represented by the original award, subsection 50-6-207(3)(B) also provides that an employee's resulting award can be further increased by multiplying the resulting award by the product of three additional factors, if applicable. Here, Employee's age was the only additional applicable factor, and the trial court calculated the total resulting award by multiplying the initial resulting award by a factor of 1.2 for Employee's age as provided in subsection 50-6-207(3)(B)(ii).

Employer contends it was error for the trial court to make a resulting award "because [Employee] has put forth no effort into finding a job that could replace the income that she has lost."  Employer emphasizes that Employee testified not only that she has not gone back to work, but that "she has not even looked into or applied for jobs that she could do even with her injury."  Employer argues that it "should not be penalized using the multipliers in this case" when Dr. Goldin's testimony that Employee might find success in work away from the public is considered with Employee's failure to attempt to work or to look for work.  Employer cites no authority for its position other than a trial court order in which the judge determined that an employee's admitted lack of effort in obtaining post-injury employment weighed against the employee.  As we have previously observed, "trial court orders are not binding authority on appeal." *Palmer v. Paul Hardy*, No. 2016-02-0026, 2017 TN Wrk. Comp. App. Bd. LEXIS 17, at *8 (Tenn. Workers' Comp. App. Bd. Feb. 23, 2017).  Accordingly, Employer's reliance on the trial court order is misplaced.  Moreover, the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel recently held that an employee's failure to seek employment does not serve as an automatic bar to benefits beyond the original award. *See Duignan v. Stowers Mach. Corp.*, No. E2018-01120-SC-R3-WC, 2019 Tenn. LEXIS 224, at *25 (Tenn. Workers' Comp. Panel June 19, 2019).

We conclude that by including the phrase "[i]f appropriate" in authorizing a trial court to award increased benefits in section 50-6-207(3)(B), the legislature expressed its intent that a trial court consider all relevant factors, including the circumstances of an injured worker's ability and/or willingness to return to work in his or her disabled state and the reasonableness of the employer in attempting to return the injured employee to work. *Cf. Bain v. UTI Integrated Logistics, LLC*, No. W2018-00840-SC-WCM-WC, 2019 Tenn. LEXIS 493, at *14 (Tenn. Workers' Comp. Panel Oct. 16, 2019) (In analyzing whether there has been a meaningful return to work, "the determination of the reasonableness of the actions of the employer and the employee depends on the facts of each case.").

In the present case, the trial court concluded that Employee suffers from PTSD, stating Employee "fears the public and unfamiliar surroundings and seldom leaves her home."  The trial court noted that "Dr. Goldin certified [Employee] could no longer perform her pre-injury occupation and questions whether she will ever work again."  Giving deference to the factual findings made by the trial court and based on the court's opportunity to hear Employee's testimony, we conclude the trial court did not err in determining it was "appropriate" to award Employee increased permanent disability  benefits pursuant to subsection 50-6-207(3)(B).

*Additional Disability Benefits Pursuant to Subsection 50-6-242(a)(2)*

Several requirements must be met for an employee to be entitled to additional benefits pursuant to subsection 50-6-242(a)(2).  First, the statute provides that "in

6

extraordinary cases where the employee is eligible for increased benefits under § 50-6-207(3)(B)," the employee may receive additional benefits "for a period not to exceed [275] weeks inclusive of the benefits provided to the employee under § 50-6-207(3)(A)." Tenn. Code Ann. § 50-6-242(a)(2). As addressed above, we have concluded the trial court correctly determined that Employee is entitled to increased benefits under section 50-6-207(3)(B). The trial court also determined this case is extraordinary, and Employer does not contend that determination to be error. However, several additional requirements must be satisfied for a trial court to award additional benefits under this subsection:

> Benefits may be awarded pursuant to this subsection . . . if the [judge] first determines based on clear and convincing evidence that limiting the employee's recovery to the benefits provided by § 50-6-207(3)(B) would be inequitable in light of the totality of the circumstances and the [judge] makes specific, documented findings that as of the date of the award . . . the three following facts concerning the employee are true:
>
> (A) The employee has been assigned an impairment rating of at least ten percent (10%) to the body as a whole, that has been determined according to the AMA [G]uides . . . by the authorized treating physician;
>
> (B) The authorized treating physician has certified on a form provided by the bureau that due to the permanent restrictions on activity the employee has suffered as a result of the injury the employee no longer has the ability to perform the employee's pre-injury occupation. The authorized treating physician's certification . . . shall have a presumption of correctness that may be overcome by the presentation of contrary clear and convincing evidence; and
>
> (C) The employee is not earning an average weekly wage or salary that is greater than or equal to seventy percent (70%) of the employee's pre-injury average weekly wage or salary.

Tenn. Code Ann. § 50-6-242(a)(2)(A)-(C).

In this case, Employer acknowledges that Employee has not returned to work and that she has an impairment rating of 15%. According to Employer, its second issue on appeal "derives from the second prong of this 3-factor test." Employer contends that "the statements made by Dr. Goldin suggest that this is not a permanent impairment," and Employer asserts that when asked in his deposition about Employee's returning to work, Dr. Goldin said "it might happen later." Employer argues this statement "contradicts the permanency requirement of the permanent partial disability benefits standard . . . [and]

7

suggests that [Employee] could return to work if she continues with her treatment and improves in ways that are foreseeable." We disagree.

In addition to the two other facts that the statute requires the trial court to "make specific, documented findings" to be true "as of the date of the award," the court must determine that Dr. Goldin, the authorized treating physician, has certified on the Bureau's form that "due to the permanent restrictions on activity [Employee] has suffered as a result of the injury [Employee] no longer has the ability to perform [her] pre-injury occupation." Tenn. Code Ann. § 50-6-242(a)(2). The trial court concluded that "Dr. Goldin certified [Employee] could no longer perform her pre-injury occupation and questions whether she will ever work again." The Bureau's Physician Certification Form, certifying the information required by the statute, was signed by Dr. Goldin on March 26, 2018 and made an exhibit at trial.

Moreover, in circumstances where a physician has testified as to the permanence of a condition, statements of that physician suggesting the condition "may improve" over time do not automatically render the physician's opinions concerning permanence invalid. *See, e.g.*, *American Mut. Ins. Co. v. Tune*, No. S/C 85-61-1, 1986 Tenn. LEXIS 784, at *12 (Tenn. Aug. 25, 1986) (physician's statement that the employee's condition was permanent, although it "may improve slowly," supported trial court's award of permanent disability benefits); *Wilson v. Spring Arbor Distribs.*, No. 03S01-9410-CV-00103, 1995 Tenn. LEXIS 581, at *11-12 (Tenn. Oct. 4, 1995) (physician's testimony that the employee's condition "could improve over the long term" did not necessitate reversing trial court's award of permanent disability benefits).

Importantly, subsection 50-6-242(a)(2)(B) provides that "[t]he authorized treating physician's certification . . . shall have a presumption of correctness that may be overcome by the presentation of contrary clear and convincing evidence." In its brief, the only evidence Employer presents in support of its position is Dr. Goldin's own testimony, asserting "the statements made by Dr. Goldin suggest that this is not a permanent impairment." Employer contends that, when asked about Employee's returning to work, Dr. Goldin's testimony that "it might happen later" is sufficient to "contradict[] the permanency requirement of the permanent partial disability standard" and suggests that Employee could return to work "if she continues with her treatment and improves in ways that are foreseeable." Employer's evidence falls far short of overcoming "by clear and convincing evidence" the presumption of correctness of Dr. Goldin's certification. Accordingly, we find no merit in Employer's second issue.

*Frivolous Appeal*

Finally, Employee has requested that we find Employer's appeal to be frivolous and that we assess an appropriate penalty. A frivolous appeal is one that is devoid of merit, *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or one

that has no reasonable chance of succeeding, *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977). Considering the totality of the circumstances, we decline to find Employer's appeal frivolous. *See* Tenn. Comp. R. & Regs. 0800-02-22-.04(6) (2018).

## Conclusion

For the foregoing reasons, the trial court's order is affirmed and certified as final. Costs on appeal are taxed to Employer.



| | | |
|---|---|---|
| Marsha Wright | ) | Docket No. 2018-08-0461 |
| | ) | |
| v. | ) | State File No. 94867-2015 |
| | ) | |
| Tennessee CVS Pharmacy, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Deana C. Seymour, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 31st day of October, 2019.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Monica Rejaei | | | | X | mrejaei@nstlaw.com |
| Tiffany Sherrill | | | | X | tbsherrill@mijs.com |
| Alex B. Morrison | | | | X | abmorrison@mijs.com |
| Deana C. Seymour, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Jeanette Baird
Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov